

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



| | | |
|---|---|---|
| EGYPTIAN GODDESS, INC., | § | |
| | § | |
| Plaintiff and Counter-Defendant, | § | |
| | § | |
| VS. | § | |
| | § | |
| SWISA, INC. and DROR SWISA, | § | |
| INDIVIDUALLY, | § | |
| | § | CIVIL ACTION NO. 3-03-CV-0594-N |
| Defendants, Counter-Plaintiffs and | § | |
| Third-Party Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | |
| ADI TORKIYA, | § | |
| | § | |
| Third-Party Defendant. | § | |

**DEFENDANTS' INITIAL CLAIM CONSTRUCTION BRIEF
FOR *MARKMAN* CLAIM CONSTRUCTION**

Michael D. Napoli
State Bar No. 14803400
Linda G. Moore
State Bar No. 14359500
Frederick L. Medlin
State Bar No. 13895930

KIRKPATRICK & LOCKHART LLP
2828 North Harwood Street, Suite 1800
Dallas, Texas 75201
Telephone No.: (214) 939-4900
Facsimile No.: (214) 939-4949

ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 3

ARGUMENT AND AUTHORITIES ............................................................................. 7

   I.  Claim construction of a design patent includes both determination of its
      functional aspects, and of its "points of novelty" over the prior art. ....................... 7

      A.  Determination of functional aspects as part of claim construction
          differs from establishing the affirmative defense of invalidity based on
          functionality. ................................................................................................... 7

      B.  For claim construction purposes, the existence of a single alternative
          does not make a single feature of a design patent "ornamental." .................... 10

      C.  Claim construction of a design patent requires determination of points
          of novelty. ...................................................................................................... 12

   II.  The only points of novelty of the '389 Patent are functional. ............................... 17

      A.  The only difference between the Nailco Patent and the '389 is the
          addition of a fourth side without foam and abrasive on it, and making
          the hollow tube of the Nailco Buffer square is functional. ............................. 17

      B.  Egyptian Goddess seeks to impermissibly evade the point of novelty
          test by treating the combination of elements as the point of novelty ............... 18

CONCLUSION ............................................................................................................ 25

i

# TABLE OF AUTHORITIES

## CASES

*Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d
1557 (Fed.Cir. 1988) ................................................................. 10, 11

*Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452 (Fed. Cir.
1997) (Rich J.) ........................................................................... 10, 11

*Black & Decker (U.S.) Inc. v. Pro-Technology Power Inc.*, 47 U.S.P.Q.2d
1843 (E.D.Va. 1998) ....................................................................... 16

*Child Craft Industrial Inc. v. Simmons Juvenile Products Co., Inc.*, 990
F.Supp. 638 (S.D.Ind. 1998) ........................................................... 15

*Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370 (Fed.Cir.
2002) ............................................................................................. 18

*Cybor Corporation v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed.Cir.
1998) ........................................................................................ 13, 14

*David White Instruments, LLC v. TLZ, Inc.*, 2002 WL 31741235 (N.D.Ill.) ..................... 18

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162
F.3d 1113 (Fed.Cir. 1998) ............................................................... 12

*Gorham Manufacturing Co. v. White*, 81 U.S. (14 Wall.) 511 (1871) ................................ 7

*Hosely International Trading Corp. v. K Mart Corp.*, 237 F.Supp.2d 907
(N.D.Ill. 2002) ......................................................................... 11, 15

*Hsin Ten Enterprise USA, Inc. v. Clark Enterprises*, 149 F.Supp.2d 60
(S.D.N.Y. 2001) ............................................................................. 11

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117 (Fed.Cir. 1993) .......................... 11

*Lamps Plus, Inc. v. Dolan*, 2003 WL 22435702 (N.D.Tex.) ............................................. 16

*Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186 (Fed.Cir. 1988) ...................................... 7, 9

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir. 1995)
(en banc) ............................................................. 1, 8, 10, 14, 16

*Metrokane, Inc. v. Wine Enthusiast*, 185 F.Supp.2d 321 (E.D.N.Y. 2002) ....................... 13

ii

*Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 2001 WL 1012685
(N.D.Tex.)....................................................................................................15, 16

*Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 2002 WL 1331883
(N.D.Tex.) *aff'd* 2004 WL 506587 (Fed. Cir.)(unpublished opinion) ........................15

*Minka Lighting, Inc. v. Craftmade International, Inc.*, 2004 WL 506587
(Fed.Cir. 2004)............................................................................................ 13-15

*OddzOn Products Inc. v. Just Toys, Inc.*, 122 F.2d 1396 (Fed. Cir. 1997)....................9, 12

*Panduit Corp. v. Ennison Manufacturing Co.*, 810 F.2d 1561 (Fed.Cir.
1987) ...............................................................................................................19

*In re Plastics Research Corp. Litigation*, 63 U.S.P.Q.2d 1924, 2002
WL 1000450 (E.D.Mich. 2002)........................................................14, 15, 19

*Spotless Enterprises, Inc. v. A & E Products Group L.P.*, 294 F.Supp.2d
322 (E.D.N.Y. 2003)....................................................................................... 8-10

*Sun Hill Industries, Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193 (Fed.Cir.
1995) ...............................................................................................................14

*Sun Hill Industries v. Easter Unlimited*, 831 F.Supp. 1024 (E.D.N.Y.,
1993), *rev'd in relevant part*, 48 F.3d at 1193 (Fed.Cir. 1995) ....................................18

*Trucook v. Bond/Helman, Inc.*, 2001 WL 826864 (N.D.Ill.)............................................11

*Unidynamics Corp. v. Automatic Products International, Ltd.*, 157 F.3d
1311 (Fed.Cir. 1998)..................................................................................7, 12, 13

*Winner International Corp. v. Wolo Manufacturing Corp.*, 905 F.2d 375
(Fed.Cir. 1990)...............................................................................................19

## OTHER AUTHORITIES

*Opinions Hidden, Citations Forbidden: Report and Recommendations of
the American College of Trial Lawyers on the Publication and
Citation of Nonbinding Federal Circuit Court Opinions*, 208 F.R.D.
659 (2002)...................................................................................................13, 14

DA-115596 v1 1200770-0001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EGYPTIAN GODDESS, INC., | § | |
| | § | |
| Plaintiff and Counter-Defendant, | § | |
| | § | |
| VS. | § | |
| | § | |
| SWISA, INC. and DROR SWISA, | § | |
| INDIVIDUALLY, | § | |
| | § | CIVIL ACTION NO. 3-03-CV-0594-N |
| Defendants, Counter-Plaintiffs and | § | |
| Third-Party Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | |
| ADI TORKIYA, | § | |
| | § | |
| Third-Party Defendant. | § | |

## DEFENDANTS' INITIAL CLAIM CONSTRUCTION BRIEF
### FOR *MARKMAN* CLAIM CONSTRUCTION

Swisa, Inc. and Dror Swisa (collectively, "Swisa") hereby file their Initial Claim
Construction Brief for *Markman* Claim Construction.

## INTRODUCTION

Swisa, Plaintiff Egyptian Goddess Inc. ("Egyptian Goddess") and Third-Party
Defendant Adi Torkiya have previously filed an Agreed Motion for New Scheduling
Order and *Markman* Hearing, in which the parties ask the Court to construe United States
Patent D467,389 ("the '389 Patent") pursuant to *Markman v. Westview Instruments, Inc.*,
52 F.3d 967, 981 (Fed.Cir. 1995)(en banc).  The parties agree that as part of such claim
construction, the Court should identify which features of the '389's design are functional.
Swisa will demonstrate below that as part of the *Markman* claim construction process the
Court should also determine what the design's points of novelty are over the prior art.

1

In this case the task of claim construction is greatly simplified by the close similarity of the '389 design to that of a prior art patent, United States Patent No. D416,648 (the "Nailco Patent"). Relevant drawings from both patents are shown below.



*The Nailco Patent*                              *The '389 Patent*

App. 50-51, 73-74. The only difference between the '389 design and the Nailco Patent is the addition of a fourth side that does not have a rectangular attachment with an abrasive surface on it. The accused device in this suit, the Swisa Buffer, shown below, is also the design of the Nailco Patent with a fourth side added, although the Swisa buffer adds a rectangular attachment with an abrasive surface to that fourth side.



*The Swisa Buffer*

The inherent obviousness of adding a fourth side to the Nailco Buffer—especially in light of prior art which Torkiya failed to disclose to the Patent Office—is a subject for another day, should this action proceed. For claim construction purposes, Swisa will demonstrate that the addition of a fourth side to the Swisa Buffer was done for a functional purpose. Whatever Torkiya's motivation in adding a fourth side, this primarily

functional aspect remains primarily functional, regardless of whether Torkiya failed to recognize that it had other than ornamental purpose.

This Court should construe the '389 Patent as having a single point of novelty, the addition of a fourth side without an abrasive surface on it. The Court should construe the feature of a fourth side as functional.

## FACTUAL BACKGROUND

In 1985, a nail buffer manufacturer named Michael Falley created a buffer in the shape of a nail file that had on it four different abrasive surfaces. Three of the surfaces were abrasive of progressively finer grit, to be used in a three-step nail buffing process. The fourth abrasive surface was for shortening and shaping the nail This buffer was called a "four-way" buffer because of its four different abrasive surfaces. App. 2.

In 1987, Falley had the idea of putting the four different surfaces on the four long sides of a rectangular foam block with square ends. The company of which Falley has been CEO since 1984, Realys Inc. ("Realys") has been making and selling this four-way buffer block ("Falley's Buffer Block") since 1987, and it has been continuously advertised since that date in the Realys' brochure. App. 2-3, 19-20. Falley's Buffer Block is pictured below:



App. 20, 37. The abrasive surfaces on the buffer block do not touch each other along the buffer's long sides. A gap—a "cuticle protection edge"—is left so that during the nail buffing process the adjacent abrasive surface will not make contact with the cuticle.

3

App. 86-87. Realys' brochure, printed in 1987 and in use ever since, described the buffer as "Block shaped for easier handling, cuticle protection edge for safety." App. 3.

Since 1987 Realys has also manufactured for Tammy Taylor a version of the buffer block that has abrasive surfaces added on only three sides (the "Tammy Taylor buffer"). App. 3-4. In imitation of the Falley product, various other foreign and domestic manufacturers make and sell "four-way" and "three-way" buffer blocks. App. 3, 20, 24-26, 58-72.

Falley was also instrumental in developing another three-way buffer which Realys' manufactures for Nailco, Inc. ("Nailco"). App. 4-5. This three-sided hollow buffer ("the Nailco Buffer"), is covered by Design Patent D416,648 (previously defined as the "Nailco Patent") and by Utility Patent No. 5,899,210. App. 5, 50-56. A drawing from the design patent is shown below, alongside an image of the actual Nailco Buffer manufactured by Realys:



App. 50-51 (patent drawing). The underlying form of the Nailco Buffer consists of a hollow tube of extruded plastic with triangular ends. Between the abrasive surfaces and the underlying plastic form are intermediate layers of foam. The foam layers, like the underlying foam block in Falley's Buffer Blocks, serve the purpose of dissipating the

4

heat produced by the friction of the nail buffing process, as well as serving as a double-sided adhesive. Also as in the Falley Buffer Blocks, the foam layers do not touch each other along the sides of the buffer, but rather a gap is left to provide a cuticle protection edge. Thus the corners of the plastic form are left exposed, giving the abrasive surfaces a "raised" look. It was Falley who suggested the intermediate foam layers, making the underlying form out of a tube of extruded plastic, and the cuticle protection edges. App. 4-5, 10.

Both Falley's buffer block and the Nailco buffer, when in use, present a risk to the manicurist. While she is rapidly moving the buffing surface back and forth over the nails she is buffing, her own nails are in danger of coming in contact with the nails being buffed. One way to solve this problem is to extend the underlying block out beyond the four abrasive surfaces at one end, as the product below illustrates:



App. 8-9. This buffer is similar to the form of the nail file covered by United States Patent No. D369, 438 (the "Resler Patent"). App. 46-48. Realys also used to manufacture the nail file that Resler patented. App. 4.

In July 2001, Falley decided to make a hollow version of his four-sided buffer block that a manicurist could hold in a different manner by inserting her index finger inside the buffer so that her own manicure would be protected. App. 6. The resulting

design can be seen as a Nailco Buffer with squares rather than triangles at either end—the squares allowing a manicurist to insert a finger, which the triangles did not allow. App. 7. This solution solves the problem of protecting the manicurists' own manicure in a different way than extending the underlying structure of the block beyond the abrasive surfaces, as Michael Falley explains:

> One could make a nail buffer using the design of the Resler Patent or something similar . . . With such a nail buffer, the manicurist would have her hand protected, but she would not have the same degree of control over the buffer as with a Swisa Buffer. With the hollow Swisa buffer, the manicurist can put her finger inside and she has control over the buffer from the inside. The same would be true with a buffer manufactured to match the design of the '389 patent. But with a nail buffer using the Resler design, the manicurist would be trying to control the buffer with an extension, which would give her less control.

App. 8-9.

In addition to allowing the manicurist to hold the buffer by inserting one finger inside, the open square sides allow the manicurist to hold the buffer between thumb and a finger, with the fingernail inserted. The desirability of having something other than a solid surface at the ends of the buffer is illustrated by another Egyptian Goddess product, a three-sided buffer block with round depressions at either end of a solid wooden block. App. 14-15.

In July 2001, when Falley conceived of the Swisa Buffer and told Dror Swisa he would make it exclusively for Swisa, Adi Torkiya's company Egyptian Goddess was selling the Nailco Buffer. Realys was manufacturing a version of that buffer for Nailco for sale to Torkiya, with the name "Egyptian Goddess" printed on it. App. 5.

Unknown to Falley, in October 2001 Adi Torkiya filed an application for a design patent on what was essentially a four-sided version of the Nailco Patent, with abrasive on

6

only three of the four sides. This design was obvious in light of the Nailco Buffer and the Falley Buffer Blocks, but Torkiya did not disclose to the Patent Office any of Falley's buffer blocks or any of the many other buffer blocks on the market. App. 17, 12-14, 107, 116.

After Falley's Swisa Buffer appeared on the market, Torkiya granted his company Egyptian Goddess an exclusive license to the '389 and the next day Egyptian Goddess brought this lawsuit against Swisa alleging infringement.

## ARGUMENT AND AUTHORITIES

**I.     Claim construction of a design patent includes both determination of its functional aspects, and of its "points of novelty" over the prior art.**

  **A.     Determination of functional aspects as part of claim construction differs from establishing the affirmative defense of invalidity based on functionality.**

For the Swisa Buffer to infringe the '389 patent, it must infringe under both of two distinct tests:  the "ordinary observer" test of *Gorham Mfg. Co. v.* White, 81 U.S. (14 Wall.) 511, 528 (1871), and the "point of novelty test." The point of novelty test requires that "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." *Unidynamics Corp. v. Automatic Products International, Ltd.*, 157 F.3d 1311, 1323 (Fed. Cir. 1998). Moreover, there is no infringement if the point of novelty is a functional feature. **"Design patents do not and cannot include claims to the structural or functional aspects of the article."** *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186 (Fed. Cir. 1988) (emphasis added).

By its very nature, hollowness of a frame, as opposed to solidity, suggests a structural or functional aspect rather than being simply ornamental—indeed, the Nailco Utility Patent makes a point of stating that "the tube is hollow which helps reduce

7

weight." App. 53. So too does the need for a fourth side in a four way buffer point demonstrate the essentially functional nature of the number of sides that a hollow nail buffer has. Thus, Egyptian Goddess, in seeking to portray as "ornamental" what would immediately appear to be a structural element, faces a daunting task. Egyptian Goddess, of necessity, will likely seek to advance both the wrong burden of proof and the wrong standard of what constitutes "functional."

The issue of "functionality" with regard to design patents arises in different contexts. A defendant may raise the affirmative defense that a design patent is invalid because the design as a whole is functional, in which case the defendant has the burden of proving such functionality by clear and convincing evidence. Determination of this issue, which is not part of a *Markman* claim construction, has historically been a question for the fact finder. Although Swisa has raised the affirmative defense that the patent is invalid based on functionality, that question is not presently before the Court.

Another context in which questions of functionality arise—and the one presented here—is the determination in the *Markman* process as to what individual features of a design are functional as opposed to ornamental. This is a matter of claim construction, and there is no burden of proof by clear and convincing evidence. Moreover, functionality in the claim construction process addresses not whether the entire design is primarily function, but whether one or more individual features are functional, and thus not protected by the design patent.

*Spotless Enterprises, Inc. v. A & E Products Group L.P.*, 294 F. Supp.2d 322, 345 (E.D.N.Y. 2003) explains the difference in the two contexts. Spotless Enterprises accused the defendant ("A & E") of infringing, among other things, two design patents

8

for lingerie hangers. A & E made two alternative arguments: (1) the patents were not infringed because the similar features were functional and (2) the design patents were invalid because they were functional. The *Spotless* court did not reach the second argument that the patents were invalid because functional, because it first found there was no infringement. 294 F. Supp. at 348. Yet although the issue of patent invalidity because of functionality was not reached, the court discussed the different standards for finding functionality in the two different contexts.

Spotless, in arguments rejected by the court, asserted that "in distinguishing between the functional and ornamental features" in construing the claim as part of the infringement analysis, "the test should be the same as that used in determining the affirmative defense of invalidity based on functionality." 294 F. Supp.2d at 344. The *Spotless* court explained the fallacy in this:

> Spotless argues that only the solely functional features— those that cannot be achieved with an alternative design— are excluded from the infringement comparison. However, the process of distinguishing the ornamental features is merely a form of claim construction and is distinct from the functionality analysis of invalidity. A design patent can be primarily ornamental, yet have swathes of features that are not infringed if copied. *See Lee v. Dayton Hudson*, 838 F.2d 1186, 1188-89 (Fed. Cir. 1988)("A device that copies the utilitarian or functional features of a patented design is not an infringement unless the ornamental aspects are also copied.") As was the case in *OddzOn Prods. [Inc. v. Just Toys, Inc.*, 122 F.2d 1396, 1406 (Fed. Cir. 1997)], the functional characteristics, while "not invalidat[ing] the design patent . . . merely limit the scope of protected subject matter." 122 F.3d at 1406. **Accordingly, even elements that are not solely dictated by function are not included in the comparison to the extent they are functional.**

294 F. Supp. at 345 (emphasis added). The *Spotless* court also noted that "[of] course, the burden of proof is quite different in an invalidity context because the party raising the

9

affirmative defense of invalidity must do so by 'clear and convincing evidence.'" *Id.* at fn. 19. It is anticipated that Egyptian Goddess may also similarly, and incorrectly, assert that Swisa has a burden of clear and convincing evidence in this *Markman* hearing.

> **B.     For claim construction purposes, the existence of a single alternative does not make a single feature of a design patent "ornamental."**

Egyptian Goddess may also argue, like the unsuccessful plaintiff in *Spotless*, that for individual features to be designated functional, those features must be **the only way** in which a particular function can be achieved. This is not the law even in the invalidity context. Rather the law is as set out in the much-cited opinion in *Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988): "if a patented design is 'primarily functional' rather than primarily ornamental, the patent is invalid." Plainly, if there is absolutely no functional alternative, a design is functional, but the fact that other alternatives exist does not mean that a design is not still primarily functional. In *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455-56 (Fed. Cir. 1997) (Rich, J.), the plaintiff had argued that because alternative designs existed, the district court should not have found a design patent invalid as functional. But the Federal Circuit held that the presence of alternative designs might **or might not** assist in determining whether a challenged design could overcome a functionality challenge.

> The presence of alternative designs may or may not assist in determining whether the challenged design can overcome a functionality challenge. Consideration of alternative designs, if present, is a useful tool that may allow a court to conclude that a challenged design is not invalid for functionality. As such, alternative designs join the list of other appropriate considerations for assessing whether the patented design as a whole—its overall appearance—was dictated by functional considerations.

10

The Federal Circuit then listed other possible considerations that might be employed in determining whether a design was primarily functional.

> Other appropriate considerations might include: whether the protected design represents the best design, whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

122 F.3d at 1456 (emphasis added).

Again, *Berry Sterling* was set in the context of patent invalidity based on functionality. The process of claims construction focuses more on the primary purpose of specific aspects of the design. Yet *Berry Sterling*, like *Avia*, is applicable to claim construction issues, because district courts have regularly applied such considerations from the invalidity context when construing design patents.

> If a particular design is essential to the use of the article of manufacture, then it is primarily functional and cannot be the subject of a design patent. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed.Cir. 1993). Conversely, if there are several ways to achieve the function of an article, the design of that article is more likely to serve a primarily ornamental purpose. *Id.* These principles regarding the functionality-ornamentality distinction were pronounced initially by the Federal Circuit in the context of challenges to design patent validity, but have been applied routinely by district courts in the context of claim construction as well. *See, e.g. Trucook v. Bond/Helman, Inc.*, 2001 WL 826864, at * 2 (N.D. Ill.); *Hsin Ten Enterprise USA, Inc. v. Clark Enterprises*, 149 F.Supp.2d 60, 63 (S.D.N.Y. 2001).

*Hosely International Trading Corp. v. K Mart Corp.*, 237 F.Supp.2d 907, 909 (N.D.Ill. 2002).

As will be further demonstrated, the only point of novelty of the '389 design is that the hollow tube is four-sided. Egyptian Goddess cannot monopolize the functional

11

and structural aspect of a four-sided hollow tube, just because four sided nail buffers can

be designed without being hollow, anymore than the patentee in *Oddzon* could protect the

tail and fins on its foam footballs.

> Oddzon argues that the shape of a football with an arrow-like tail is an ornamental feature because 'it is not required for a tossing ball.' While Oddzon correctly states that there are many ways of designing 'tossing balls,' it is undisputed that the ball in question is specifically designed to be thrown like a football, yet travel farther than a traditional foam football. It is the football shape combined with fins on a tail that give the design these functional qualities. The tail and fins on OddzOn's design add stability in the same manner as do the tail and fins found on darts or rockets. **They are no less functional simply because 'tossing balls' can be designed without them.** On the other hand, contrary to Just Toys' arguments in its cross-appeal, **these functional characteristics do not invalidate the design patent, but merely limit the scope of the protected subject matter.**

22 F.3d at 1406 (emphasis added).

## C. Claim construction of a design patent requires determination of points of novelty.

"The requirement that the court construe disputed claim language, as applied to

design patents, must be adapted to the practice that a patented design is claimed as shown

in its drawing." *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber co., Inc.*, 162

F.3d 1113, 1116 (Fed. Cir. 1998). The scope of protection provided by a design patent is

limited to those aspects that are ornamental and novel. *Unidynamics, supra,* 157 F.3d. at

1323 ("A design patent only protects the novel, ornamental features of the design

patented."). The Federal Circuit has explained that a claim construction process requires

a court to determine the "scope and meaning" of the patent claim asserted:

> An infringement analysis involves two steps. First, the court determines the scope and meaning of the patent claims asserted, see *Markman II* . . . and then the properly

12

> construed claims are compared to the allegedly infringing
> device . . .

*Cybor Corporation v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). It

follows from the proposition that the scope of protection of a design patent is limited to

ornamental and novel aspects, and that claim construction involves determining the scope

of the patent claim, that in a claim construction hearing the court should determine the

novel aspects of the design just as it should determine which features are ornamental.

**"Because a design patent only protects the novel, ornamental aspects of the design**

**as shown in the patent . . . a court must identify these aspects in order to construe**

**the scope of protection of the patent."** *Metrokane, Inc. v. Wine Enthusiast*, 185

F. Supp.2d 321, 326-327 (E.D.N.Y. 2002) (emphasis added).

The proposition unambiguously set out in *Metrokane* follows directly from

published Federal Circuit opinions such as *Unidynamics* and *Cybor*, although the Federal

Circuit has not made quite such an explicit statement of the principle in a published

opinion.  In an unpublished affirmance of a case coming up from the Northern District of

Texas, the Federal Circuit very recently stated "But an extensive verbal claim

construction may be helpful particularly if the drawings contain features that are not part

of the patented design, *e.g.*, if the drawings contain functional features **or if there is a**

**point of novelty issue to consider."** *Minka Lighting, Inc. v. Craftmade International,*

*Inc.*, 2004 WL 506587, at *2  (Fed. Cir. 2004) (not selected for publication) (emphasis

added).[1]  This decision states it has no precedential value.  But examination of recent

---

[1]  A copy of the opinion is attached at App. 138-141.  Fifth Circuit Local Rule 47.5.4
allows citation of unpublished opinions handed down after January 1, 1996.  "The
Federal Circuit . . . is silent on the question of what courts and what proceedings are
covered by its ban on the citation of nonbinding holdings . . .. " William T. Hangley,
*Opinions Hidden, Citations Forbidden: Report and Recommendations of the American*

13

district court opinions pre-dating *Minka* further illuminates why courts should determine points of novelty as part of the claim construction process.

The court expressly addressed the issue of whether it should construe the novel aspects of the design in *In re Plastics Research Corp. Litigation*, 63 U.S.P.Q.2d 1924, 1925, 2002 WL 1000450, at * 1 (E.D. Mich.). There the court had entertained, *sua sponte*, doubt about whether it should determine the points of novelty as a matter of claim construction. The court noted that during the *Markman* hearing, and in the preceding briefs, all of the parties had "assumed that ascertaining the point of novelty [was] within the province of the court." *Id.* "None of the parties, however, [had] supported this conclusion with any analysis or authority." *Id.* The court thus had "questioned the parties' assumption on the bases that (1) the point of novelty derives from the scope and content of the prior art and (2) a number of cases addressing obviousness have treated the scope and content of the prior art as a question for the jury." *Id.* But after full briefing, the court was satisfied that it should determine the points of novelty.

> The parties have fully briefed the issue, with Defendants maintaining that the point of novelty is for the judge and Plaintiff now arguing that it is reserved for the jury.
>
> Having more fully reviewed the implications of the Supreme Court's decision in *Markman* . . .and the Federal Circuit's subsequent opinion in *Cybor Corporation v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998), the court is persuaded that the point of novelty is a question of law to be resolved by the judge. *See also Sun Hill Indus. Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1197-98 (Fed. Cir. 1995) (treating point of novelty as a question of law that did not warrant 'exercise of the fact-finding function'). It is so determined in this case, and the court next turns to determining the point of novelty.

---

*College of Trial Lawyers on the Publication and Citation of Nonbinding Federal Circuit Court Opinions*, 208 F.R.D. 659 (2002). The issue of citation of Federal Circuit decisions is also discussed at 208 F.R.D. at 661, 680.

14

*Id.*

Other district courts have plainly stated that determining the point of novelty was part of the process of construing the claim of a design patent. The court in *Hosely, supra,* 237 F. Supp.2d at 912, fn. 4 noted that "[b]ecause the court concludes that the intrinsic evidence, specifically the patent and prosecution history, is sufficient **to construe the point of novelty of the '369 patent,** the court need not rely on extrinsic evidence in the instant case." (emphasis added). The court in *Child Craft Indus. Inc. v. Simmons Juvenile Products Co., Inc.,* 990 F. Supp. 638, 640 (S.D. Ind. 1998) also recognized the need, while construing a design patent, to look at prior art and determine the points of novelty. "In construing the claim of a patent, the Court may consider only the ornamental, novel and non- functional features of the design." *Id.* Therefore, "[t]he prior art is also relevant to construing the claim of the design patent, for a design patent covers only those design elements that are novel." *Id.*

Two contrary cases, both out of the Northern District and pre-dating the unpublished Federal Circuit opinion in *Minka,* warrant attention. One is an earlier opinion in the *Minka* case, where Magistrate Kaplan adopted the opinion of a special master: *Minka Lighting, Inc. v. Craftmade Int'l, Inc.,* 2001 WL 1012685, at *24 (N.D. Tex.), *adopting* Rep. & Rec. of Special Master (2001) (hereafter, *"Minka 2001."*)[2] The special master took the approach rejected by the court in *Plastic Research,* stating that, because a number of cases addressing invalidity based obviousness had treated the scope and content of the prior art as a question for the jury, therefore by analogy the point of

---

[2] The unpublished Federal Circuit affirmance in *Minka* is not an appeal from *Minka 2001,* but from *Minka Lighting, Inc. v. Craftmade Int'l, Inc.,* 2002 WL 1331883 (N.D.Tex.) *aff'd* 2004 WL 506587 (Fed. Cir.)(unpublished opinion).

15

novelty for purposes of the infringement test had to be determined by the finder of fact. The special master erred in analogizing between the two contexts, because determining "what the prior art teaches" for purposes of determining obviousness *for purposes of patent validity* is different from construing the patent to determine what is protected by it. The fallacy in the analogy is illustrated by the fact that engaging in the same analysis with regard to functionality would lead to the conclusion that a court could not construe which aspects of a design patent are functional, because, *for purposes of patent validity,* functionality has historically been a question of fact for the jury. Indeed, this precise analogy to the patent invalidity context was previously used as grounds by a district court for reaching the now untenable conclusion that functionality should **not** be determined as a matter of construing a design patent claim. *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 47 U.S.P.Q.2d 1843, 1846 (E.D.Va. 1998). The *Minka 2001* special master understood that one had to recognize a difference between determining functional aspects in a *Markman* hearing—an issue for the court—and determining functionality for purposes of patent validity—historically a jury issue. *Minka 2001* at *24. Yet he failed to recognize that the same distinction meant that, for purposes of construing a patent as opposed to the context of a challenge to validity, the court should properly determine points of novelty.

*Minka 2001* was later relied upon in *Lamps Plus, Inc. v. Dolan*, 2003 WL 22435702 (N.D. Tex.), at *4. Citing only to *Minka 2001*, the *Lamps Plus* court stated that "the issue of what constitutes a point or points of novelty of a design patent falls into the realm of fact issues for the jury to decide." *Id. Lamps Plus*, like *Minka 2001*, is in error.

16

## II. The only points of novelty of the '389 Patent are functional.

### A. The only difference between the Nailco Patent and the '389 is the addition of a fourth side without foam and abrasive on it, and making the hollow tube of the Nailco Buffer square is functional.

A side by side comparison of the '389 patent with the prior art of the Nailco Patent immediately reveals that the only difference between the two is the addition in the '389 design of a fourth side, which does not have an intermediate layer of foam and abrasive on it.



A recognition that the only point of novelty of the '389 design over the Nailco Patent is the addition of a fourth side that does not have foam and abrasive on it, coupled with a conclusion that the addition of a fourth side is functional, eliminates Egyptian Goddess's infringement case. The Swisa buffer has foam and abrasive on all four sides, so that to the extent the absence of foam and abrasive on the fourth side is a novel aspect of the '389 design over the prior art, it is not incorporated in the Swisa Buffer. The existence of a fourth side itself in the Swisa buffer is functional, because it allows insertion of a finger as well as providing the fourth surface necessary for a four-way buffer.

17

**B. Egyptian Goddess seeks to impermissibly evade the point of novelty test by treating the combination of elements as the point of novelty.**

Egyptian Goddess and Torkiya, aware of the limited extent to which the '389 is different from the Nailco Patent, have attempted to manufacture a lengthy list of supposed differences, by employing the principle that what is new is the "combination of elements"—a principle rejected by the Federal Circuit in *Sun Hill, supra,* 48 F.3d at 1197-98 and more recently in *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370 (Fed. Cir. 2002) ("[I]t is legal error to merge the [ordinary observer and point of novelty] tests, for example by relying on the claimed overall design as the point of novelty.") *Accord, e.g. David White Instruments, LLC v. TLZ, Inc.*, 2002 WL 31741235 (N.D. Ill) ("The overall proportions and relationships of the components cannot be considered a point of novelty because it improperly merges the 'ordinary observer' and "point of novelty" tests.")

In *Sun Hill*, the district court below had found that a lawn bag infringed a design patent for a lawn bag with a pumpkin face on it. In applying the "point of novelty" test, the district court had agreed with the plaintiff that the design patent applied to the lawn bag "as an integrated and ornamental whole, for it is that whole—the ornamental gestalt—that is new, unique and therefore worthy of protection." *Sun Hill Industries v. Easter Unlimited*, 831 F. Supp. 1024, 1036 (E.D.N.Y., 1993), *rev'd in relevant part*, 48 F.3d at 1193 (Fed.Cir. 1995). In reversing on this issue, the Federal Circuit found that the district court had incorrectly applied the "point of novelty" test. It held that a court "cannot evade the point of novelty test by relying on the claimed overall design as to the point of novelty." 48 F.3d at 1197.

> To consider the overall appearance of a design without regard to prior art would eviscerate the purpose of the

18

> 'point of novelty' approach, which is to focus on those
> aspects of a design which render the design different from
> prior art designs.

*Id.*, quoting from *Winner Int'l Corp. v. Wolo Mfg,. Corp.*, 905 F.2d 375, 376 (Fed. Cir. 1990.)

Notably, although the Federal Circuit reversed the district court's finding as to the point of novelty, it did not remand, "because 'nothing of record warrants a further exercise of the fact-finding function.'" 48 F.3d at 1198, quoting *Panduit Corp. v. Ennison Mfg. Co.*, 810 F.2d 11561, 1565-66 (Fed. Cir. 1987).[3] The "point of novelty" of the design patent was narrow.

> The only differences between the trial court's description of
> Sun Hill's claimed design and the Noteworthy bags are the
> contrasting jack-o-lantern faces, the bottom closure, the
> specific features of the jack-o-lantern faces, and the shiny
> surface. The point of novelty therefore consists at most of
> these four features. This court assumes, without deciding,
> that none of these features are functional, and therefore all
> qualify as valid points of novelty.

48 F.3d at 119. Thus the court found the bags at most had four points of novelty. As none of these were in the accused product, as a matter of law there was no infringement.

Egyptian Goddess seeks to evade the reality that only the addition of the fourth side makes the '389 patent different from the Nailco Buffer through just such a "unique combination" approach as the Federal Circuit rejected in *Sun Hill*. Egyptian Goddess essentially claims that the combination of the addition of the fourth side with every other aspect of the buffer is a separate "point of novelty."

---

[3] The fact that Federal Circuit saw no reason to remand for a finding of fact as to points of novelty is what led the *Plastic Research* court to rely upon *Sun Hill* in determining that it was appropriate for a court to determine the point of novelty as part of claim construction. *Plastic Research, supra,* 19252992 WL at *1.

19

Imagine two identical twins, Jim and Jeff, who are in every possible way alike. Jeff puts on a blue hat. That is the only difference between the twins—unless one sees them through the eyes of Egyptian Goddess. Then there are many differences. Jim and Jeff are both six feet tall, but one of the many ways that Jeff is different from Jim is that *he has a hat on **and** is six feet tall.* A third way that he differs from Jim, who has blue eyes, is that *Jeff has a hat on **and** has blue eyes*, while Jim only has blue eyes.

This illustrative metaphor in no way exaggerates Egyptian Goddess' audacious attempt to multiply the '389 design's points of novelty. In an Interrogatory Answer, Egyptian Goddess claimed that the subject of the '389 Patent had **twelve** points of novelty over the prior art. App. 134-35. Egyptian Goddess arrived at this by taking one feature, that the hollow tube of the '389 design is square, and by combining that feature with other non-novel features, expressing that one allegedly new feature as a dozen alleged new features. The dozen asserted points of novelty are set out below, with comments on them, most of which are taken from the Declaration of Michael Falley and his Supplemental Expert Report.

*1. An open, hollow square tube having 90 degree corners.*

The fact that the hollow tube is square is the only arguable point of novelty in this alleged novel feature. The fact that the '389 design uses an open, hollow tube is not novel—it was present in the Nailco Buffer. Torkiya has simply added a fourth side to the Nailco Buffer, making it more the shape of a Falley Buffer Block. This first listed "novel feature" also notes that the design has 90 degree angles, but this just seems just to be a repetition of the fact that the ends of the tube are square. App. 8-9.

*2. Each of the four interior edges of the 90 degree corners of the open, hollow square*

20

*tube are rounded.*

**3. *Each of the four exterior edges of the 90 degree corners of the open, hollow square tube are rounded.***

These two are discussed together. Both "features" are nothing but the first feature discussed above—an open, hollow square tube with 90 degree corners—with the added fact that the interior corners and the exterior corners are rounded. There is nothing novel about the corners being rounded: this is taken from the Nailco Buffer, which Realys manufactures and which Torkiya sold until recently. An examination of the Nailco Patent demonstrates that in it both the interior and exterior corners of the tube are slightly rounded. App. 51.

As noted above, Michael Falley helped develop the Nailco Buffer. His company, Realys, makes both the Nailco Buffer and the Swisa Buffer by casting a long tube of extruded plastic, and in both cases it was Falley who decided to make the buffers that way. Realys uses a three-sided tube for the Nailco Buffer and a four-sided tube for the Swisa Buffer. The individual buffer forms are cut off of the tubes. The tubes come out of the extrusion process with slightly rounded corners. Falley does not think one could make a plastic extrusion tube of the sort Realys uses for the Nailco and Swisa buffers without the long edges being slightly rounded. Falley asserts that there is no ornamental purpose to this, and it certainly is not "novel." App. 9-10.

**4. *A plurality of rectangular attachments to the sides of the open, hollow square tube, each running longitudinally.*** If one takes out the repetition of the "open, hollow square tube" language, what is left of is "a plurality of rectangular attachments to the sides . . . each running longitudinally." Again, this feature is present in the Nailco Buffer, as well

21

as in Falley's buffer blocks and the Swisa Buffer.   Its presence in all three results from it

being dictated primarily by function. As Falley has explained:

> If you are going to have a three-way or four-way buffer,
> you are going to have to have attachments with different
> abrasive surfaces, and they are going to be running
> "longitudinally" because of how nail buffing works. And I
> don't see what other shape they would be other than
> rectangular.

App. 10.

**5.  *The rectangular attachments to the sides of the open, hollow square tube run along***

***the full length of the tube.***   Again, there is nothing novel about the rectangular

attachments running along the full length of the tube.  The Nailco Buffer does exactly the

same thing, as do the Falley Buffer Blocks.  Again it is present in both because it is

dictated by a functional concern, as Michael Falley explains.

> It's functional.  If the sides of the plastic tube are longer
> than the rectangular attachments with the abrasive surfaces,
> then the buffer is larger than necessary.  You are wasting
> material and making the buffer more awkward to use.

App. 11 at ¶ 27.

**6.  *The rectangular attachments cover the flat sides of the rectangular tube.***  Again, the

rectangular attachments cover the sides of the Nailco Buffer, and this aspect is functional.

App. 11 at ¶ 28.

**7.   *The corners of the open, hollow square tube are exposed.***  Egyptian Goddess'

attempt to claim this as a "novel feature" perhaps best exemplifies the general character

of Torkiya's attempt to sue one of Michael Falley's customers for patent infringement by

asserting authorship of many of the developments Falley has made in the field of nail

buffers.  As explained above, the gap between the abrasive surfaces on each side is a

"cuticle protection edge," a concept first developed by Falley back in 1987 and

22

advertised ever since. App. 4-5, 11-12. Falley introduced the concept into the Nailco Buffer that Realys manufactured, and which Egyptian Goddess was ordering as recently as 2003. App. 4- 5. As suggested in Falley's Declaration, it is surprising that Egyptian Goddess would even attempt to claim that such a transparently borrowed, functional feature is both novel and ornamental:

> Torkiya obviously took this functional feature from the Nailco Buffer, which he was selling. The feature is neither new nor ornamental. How can Adi Torkiya take a feature I invented and have been advertising since 1987, and then sue one of my customers for selling another one of my buffers with that same feature, and then claim the feature is "novel" and "ornamental?"

App. 12.

**8. There is a rectangular attachment on both the bottom and front side of the open, hollow square tube;**

**9. There is a rectangular attachment on both the bottom and back side of the open, hollow square tube;**

**10. There is a rectangular attachment on both the front and back side of the open, hollow square tube;**

**11. There is a rectangular attachment on the bottom, the front side, and the back side of the open, hollow square tube;**

These four claimed "points of novelty" perhaps most vividly illustrate the Egyptian Goddess approach of multiplication of asserted "points of novelty." Here Egyptian Goddess is trying to turn the single feature of having abrasive surfaces on three sides of a four sided form into four different novel features.

Egyptian Goddess cannot simply assert that a "novel feature" of the '389 design is that there are three abrasive sides on a four sided buffer. First of all, the Swisa Buffer he

is claiming infringes does not have this feature, but rather has abrasive on all four sides. Secondly, the feature of three abrasive sides on a four-sided buffer is not novel—there are buffer blocks with abrasive on only three sides, such as the buffer block that Realy's makes for Tammy Taylor. App. 3-4. As Michael Falley explains:

> One gets back to the fact that Torkiya has allegedly designed and has patented what is either a hollow version of my buffer block, or the Nailco Buffer but with four sides instead of three. Now Torkiya is trying to count the fact that this buffer is hollow with square ends not just as one feature—he is trying to turn it into twelve new features, when all the other features were already present in prior art.

App. 13.

**12. The principle longitudinal dimension of the open, hollow square tube is approximately three times the span of the cross-section.**

Again, the feature of being approximately three times as long as wide is not novel.

Michael Falley explains the history of this ratio of length to width:

> If you look again at the 1987 brochure that is at Exhibit 1 to my Expert Report, you will see that the original four-way buffer block was one inch by one inch by three inches, which I considered the proper functional size for a buffer block back when I invented the four-way buffer block. Realys has been selling buffers in those dimensions ever since. The abrasive surfaces shown for the buffer in the drawings to the Nailco Design Patent, Exhibit 9 to my Expert Report, are also in the same approximate proportion. The Nailco Buffer itself is approximately 3 ½ inches long and 1 inch wide. Realys also now makes the plastic form of the Swisa Buffer 3 ½ inches long and 1 inch wide, although it was originally a little shorter. Sand paper is made and worked in 9 inch by 11 inch sheets. So you can die cut nine blocks that are almost 1 inch, and you can then die cut three rows where the rows are 3 ½ and then you have used up the sheet with minimum waste. The proportions are neither novel nor ornamental. Again, this is an example of Torkiya having taken another feature that I designed and trying to list it as being "novel" by adding it to the words "hollow square tube."

App. 13-14.

These then are the twelve asserted "points of novelty" of the '389 patent's design. If one takes out the words related to it having squares at the end, like "square tube," "90 degree corners," and "four sides," you have twelve features, **each and every one of which is in the Nailco Buffer**: (1) an open, hollow tube (2) interior edges are rounded (3) exterior edges are rounded (4) a plurality of rectangular attachments, each running longitudinally (5) the rectangular attachments run along the full length of the tube (6) the rectangular attachments cover the flat sides of the tube (7) the corners are exposed (8) thru (11) there are rectangular attachments on three sides of the tube and (12) the principal longitudinal dimension of the open, hollow square tube is approximately three times the span of the cross section. App. 14.

## CONCLUSION

The Court should construe the '389 design as having a single point of novelty over the prior art of the Nailco Patent: the addition of a fourth side without an abrasive surface on it. The Court should further hold that the addition of a fourth side is a functional feature, so that the only non-functional point of novelty in the '389 is the absence of an abrasive surface on a fourth side of a hollow buffer.

25

Respectfully submitted,

Michael D. Napoli
State Bar No. 14803400
Linda G. Moore
State Bar No. 14359500
Frederick L. Medlin
State Bar No. 13895930

KIRKPATRICK & LOCKHART LLP
2828 North Harwood Street, Suite 1800
Dallas, Texas 75201
Telephone No.: (214) 939-4900
Facsimile No.: (214) 939-4949

ATTORNEYS FOR DEFENDANTS


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Defendants' Initial Claim Construction Brief for Markman Claim Construction was forwarded via certified mail, return receipt requested, on this 31st day of March, 2004, ton Plaintiff's counsel as follows:

Robert G. Oake, Jr., Esq.,
Law Office of Robert G. Oake, Jr.,
101 W. McDermott, Suite 109,
Allen, Texas 75013

Rudolf O. Siegesmund
4627 N. Central Expressway, Ste. 2000
Dallas, Texas 75205-4017

Frederick Linton Medlin

26